IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BRANDI ROOF, individually and as next )
friend and parent of A.S. a minor, )
)
         Plaintiff, )
)
vs. )    NO. CIV-14-1123-HE
)
NEW CASTLE PUBLIC SCHOOL, *et al.,* )
)
         Defendants. )

# ORDER

In this case, plaintiff Brandi Roof asserts claims against Newcastle Public School District No. 1 of McClain County (the "District") and Jared Feroli, a former teacher at the District's high school. Plaintiff asserts that, in September 2013, defendant Feroli began an affair with A.S, her minor daughter.[1] The conduct allegedly extended into January 2014. Based on the conduct alleged, the Amended Complaint [Doc. #5] asserts four claims: (1) a Title IX (20 U.S.C. § 1681) claim, (2) a negligence claim, (3) a due process claim under 42 U.S.C. § 1983, and (4) an assault and battery claim. Although not altogether clear from the complaint or the parties' submissions, it appears claims 1 and 2 are asserted only against the District. Claim 3 focuses on the district, but also arguably includes Feroli. Claim 4 is asserted only against Feroli.[2]

---

[1]*The "affair" is alleged to have consisted of kissing and "heavy petting" while on the school premises, as well as "snap chatting", between Feroli and A.S.. The snap chatting allegedly led to Feroli sending A.S. pictures of his genitals and discussions of his sexual preferences. "Snap chatting" presumably refers to use a photo messaging application which allows the user to take photos or record videos, add text, and then send them to designated recipients.*

[2]*Also unclear is the exact status of plaintiff. The case caption indicates that Ms. Roof is appearing both "individually" and as parent and next friend of A.S. However, all of the claims*

Both defendants have moved to dismiss certain of the claims against them on the basis of Fed.R.Civ.P. 12(b)(6). District seeks dismissal of the negligence and § 1983 claims. Feroli seeks dismissal of the negligence claim.

Discussion

When considering whether a plaintiff's claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pled factual allegations as true–even those denied by defendants, as Feroli does here–and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Applying this standard, the court concludes the District's motion should be granted. Feroli's motion will be stricken.

Feroli's motion is addressed first. It seeks dismissal only of the negligence claim and does not seek dismissal of the assault and battery claim or of the § 1983 claim. Feroli

*appear to be directed to harm allegedly suffered by "Plaintiff's minor" and it is unclear what, if any, claims are actually asserted on behalf of Ms. Roof individually.*

presumably relies on language in the negligence claim suggesting that it is asserted against both defendants. However, plaintiff's response clarifies that Feroli's conduct is referenced in the negligence claim only "to impute liability to Feroli's employer, the Newcastle School District, and are not to establish a separate negligence cause of action against Feroli." Response [Doc. #15] at 1. As no negligence claim is asserted against Feroli, his motion is unnecessary and will be stricken.

The District's motion seeks dismissal of the state law negligence claim on the basis the District is immune from liability under the "discretionary function" exemption of the Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 Okla. Stat. 155(5),[3] and that it is not liable on the basis of respondeat superior for any acts like those alleged as to Feroli.

To the extent that the negligence claim is based on a theory the District had a duty to protect students by maintaining a secure premises, it is barred by the discretionary function exemption. In Truitt v. Briggs, 611 P.2d 633 (Okla. 1980), the Oklahoma Supreme Court concluded that a school performs a discretionary function, and is therefore immune from tort liability, in determining what security measures are necessary. *See also*, Franks v. Union City Pub. Schools, 943 P.2d 611, 613 (Okla. 1997) (concluding that schools perform a discretionary function in deciding on the supervision necessary during the lunch period). Therefore, to the extent plaintiff seeks to hold the District liable for failing to maintain security procedures that might have stopped the alleged conduct, she states no claim for

---

[3]*Oklahoma has waived its sovereign immunity for torts to the extent stated in the OGTCA. An "exemption" refers to conduct the legislature has excluded from the general waiver of immunity.*

3

negligence.

To the extent plaintiff suggests the District was negligent because of the way it responded to the circumstances after it allegedly learned of them, the authorities are less clear, but the court similarly concludes the discretionary function exemption bars a negligence claim based on the factual allegations involved here.

The Amended Complaint alleges that sometime between November 2013 and December 18, 2013, the principal of Newcastle High School was "told about Feroli's affair with AS." (Amended Complaint, para. 12). The same paragraph further states: "Instead of terminating Feroli, the School gave Feroli a warning and was told to stay away from AS." Among other things, the complaint goes on to allege that on January 24, 2014, the principal called in one of A.S.'s friends, who complained about the relationship, and that "Feroli was subsequently suspended from the school." (Amended Complaint, para. 13). Although plaintiff summarily argues that this constituted the District doing nothing about the problem, apparently on the assumption that only firing Feroli would qualify as "doing something," the actual factual allegations of the complaint indicate the District did do something. It (apparently, either the principal or others) issued a warning to Feroli and directed him to stay away from A.S.,[4] with stronger sanctions following later reports of continued improper conduct.

The Oklahoma Supreme Court appears not to have addressed the discretionary

---

[4]*Plaintiff's response [Doc. #10, at 4] indicates the District gave Feroli a "written warning." The complaint alleges only that a warning was given.*

function exemption in circumstance like those alleged here, but has indicated that an act "is discretionary when it is the result of judgment." Robinson v. City of Bartlesville Bd. of Educ., 700 P.2d 1013, 1017 (Okla. 1985). However, every act that involves some element of judgment does not qualify, as such a broad application of the exemption would reach virtually every decision at some level. Nguyen v. State, 788 P.2d 962, 964 (Okla. 1990). Rather, the exemption should be viewed as limited, ordinarily applying to "initial policy level or planning decisions" and not to "operational level decisions made in the performance of policy." *Id.* at 964-65. Whether the exemption applies in a particular circumstance depends on the facts of the case. Robinson, 700 P.2d at 1017.

Some Oklahoma authorities suggest the discretionary function exemption should apply here. In Jackson v. Okla. City Pub. Sch., 333 P.3d 975 (Okla.Civ.App. 2014), the Court of Civil Appeals upheld summary judgment in favor of the school district where the plaintiff parents alleged a teacher had physically assaulted their child and argued the district was negligent in hiring, training and supervising the teacher. The court stated that it is "well-settled that a school's hiring, training, and supervising decisions are discretionary and therefore a school may not be liable for damages resulting from these decisions." *Id.* at 979. It cited in support of that statement Houston v. Indep. Sch. Dist. No. 89 of Oklahoma County, 949 F.Supp.2d 1104, 1109 (W.D. Okla. 2013), which did not view the exemption quite so expansively. Houston concluded the exemption extended at least to the supervision of managerial-level employees and other courts have also focused on whether the particular employee whose actions were at issue was or was not a managerial-level person. *See* Allen

v. Justice Alma Wilson Seeworth Academy, Inc., No. Civ-12-0093-HE, 2012 WL 1298588 (W.D. Okla. April 6, 2012); Benedix v. Indep. Sch. Dist. No. I-0007 of Okla. Cnty., Okla., No. Civ-08-1060-D, 2009 WL 975145 (W.D. Okla. April 9, 2009).  It is therefore not clear that the Oklahoma Supreme Court would apply the exemption as broadly as the Court of Civil Appeals did in Houston.  Nonetheless, given that Houston is the most recent expression by the Oklahoma courts on the issue, that it involved conduct by a teacher situated much like Feroli here, and that the particular circumstances alleged in the complaint appear to involve the quintessential judgment call—confronted with a disputed charge of improper conduct by a teacher, should the district immediately terminate the teacher or is some lesser response appropriate?—the court concludes the exemption applies to the facts alleged and that no claim is stated against the District.

To the extent plaintiff's "negligence" claim is premised on District liability for Feroli's alleged acts, on the basis of respondeat superior, the OGTCA bars the claim though Feroli's alleged acts do not strike the court as involving "negligence."  The acts alleged as to him are intentional, rather than negligent, acts.  However, the OGTCA addresses liability for all torts, not just ones sounding in negligence.  And the state has waived its liability for torts of its employees only where the employee's actions were within the scope of his or her employment.  *See* 51 Okla. Stat. § 153(A).  "'Scope of employment' means performance by an employee acting in good faith within the duties of the employees' office or employment...."  51 Okla. Stat. § 152(12).  Ordinarily, the scope of employment determination is one for the jury based on the particular facts and circumstances.  Here,

6

however, where the alleged acts of the employee involve sexual misconduct with a minor and where there is no arguable basis for suggesting the District's interests were being advanced by the alleged conduct, the alleged conduct is plainly outside the scope of employment. *See* Tuffy's Inc., v. City of Okla. City, 212 P.3d 1158, 1166 (Okla. 2009) *and* N.H. v. Presbyterian Church, 998 P.2d 592, 599-600 (Okla. 1999). As a result, the District is not liable for the alleged acts of Feroli based on a respondeat superior or similar theory.

As none of the theories upon which plaintiff relies suffice to state a claim against the District for negligence, and it is not otherwise responsible for the alleged acts of Feroli, plaintiff's second cause of action ("Negligence") does not state a claim.

The District seeks dismissal of the § 1983 claim on the basis that no underlying constitutional violation is alleged and that, in any event, no basis for District liability is alleged.

The § 1983 claim is based on the alleged violation of A.S.'s due process rights, and the Amended Complaint alleges A.S. had both a property interest and a liberty interest in her education which was infringed by the alleged conduct. The District's challenge focuses on whether a custodial relationship existed, whether it had a duty to protect, and the like, apparently directed to whether a liberty interest existed in these circumstances. Plaintiff's response makes little effort to address the nature of the underlying violation, but argues instead that she has alleged deliberate indifference and that's enough.

It is unnecessary at this point to sort through the details as to whether an underlying

7

constitutional violation is alleged, or the specific nature of it,[5] as the court concludes a basis for the District's liability has not been alleged. A political subdivision like the District cannot be held liable under § 1983 solely because its employee violated someone's constitutional rights. To establish the liability of the subdivision (i.e. the employer), a plaintiff must show that the constitutional injury was the direct result of a policy or custom of the entity. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010). That policy or custom may take the form of (1) a formal regulation or policy statement, (2) an informal custom or practice so widespread and well-settled that it constitutes a custom or usage with the force of law, (3) a decision by an employee with final policymaking authority, (4) ratification by a policy maker of a subordinate's decision, or (5) the failure to adequately train or supervise, where that failure results from "deliberate indifference" to the injuries that may be caused. *Id.*

There is no allegation here that any policy or custom approved or permitted the conduct Feroli is alleged to have engaged in, nor are there allegations that would support an inference of custom or practice sanctioning it. Similarly, if it is plaintiff's position that the underlying constitutional violation was the nature of the principal's action (rather than Feroli's), the conclusion is not different. Apparently (though it is not clear from plaintiff's very abbreviated discussion), plaintiff is relying on the theory of entity liability last

---

[5]*It appears reasonably clear that plaintiff has stated a claim against Feroli based on A.S.'s substantive due process interest in bodily integrity. See Abeyta By and Through Martinez v. Chama Valley Ind. Sch. Dist. No. 19, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights.")*

mentioned above — failure to adequately supervise due to deliberate indifference. However, the allegations of the Amended Complaint fall short of showing any plausible basis for liability on that basis. It alleges that the principal was told of the "affair" during November or December, 2013, and that Feroli was given a warning and told to stay away from A.S. It alleges Feroli was suspended some time in (or maybe after) January 2014, after the principal called in one of A.S.'s friends who had complained about the relationship. Beyond that, the complaint includes only conclusory allegations about the District's "lack of remedial action" (discussed above), its failure to implement a policy or custom and practice sufficient to protect A.S., and its "deliberate indifference and reckless disregard" for AS's rights. The court concludes the complaint does not allege a basis for plausibly concluding that the District was deliberately indifferent to the potential for circumstances such as plaintiff alleges. As a result, no claim is stated against it.

Finally, the District challenges plaintiff's request for punitive damages as to all claims against the District.[6] It relies on the OGTCA as to the state claim (51 Okla. Stat. § 154(B)) and plaintiff does not challenge the District's assertion that punitive damages are unavailable against it based on the statute. Similarly, plaintiff concedes that punitive damages are unavailable against the District as to the § 1983 claim. Plaintiff does argue that punitive damages should be available as to the Title IX claim, on the basis that it is different in

---

[6]*As plaintiff correctly notes, a request for punitive damages is not a separate claim and the District's challenge to the request(s) is not technically for "failure to state a claim." However, as the availability of punitive damages in this case turns on pure questions of law, the court concludes the issue may appropriately be dealt with here.*

9

various respects from a § 1983 claim. However, while there appears to be no binding authority as to the availability of punitive damages for a Title IX claim, the U.S. Supreme Court has concluded punitive damages are not available in a claim under Title VI of the Civil Rights Act of 1964. Barnes v. Gorman, 536 U.S. 181 (2002). That Court has generally interpreted Title IX consistently with Title VI, *id.* at 184, and the rationale for its determination, rooted in Congress' spending power, appears equally applicable to a Title IX case. Therefore, the court concludes, as have other courts in this district, that punitive damages are unavailable as to the Title IX claim. Najera v. Indep. Sch. Dist. of Stroud No. I-54 of Lincoln Cnty., ___ F.Supp.3d ____, 2014 WL 5018604 (W.D. Okla. 2014); Elizabeth S. v. Okla. City Pub. Sch., No. Civ-08-105-M, 2008 WL 4147572 (W.D. Okla. Sept. 3, 2008); James ex rel. Z.J. v. Indep. Sch. Dist. No. I-007 of Okla. Cnty. State of Okla., No. CIV-07-434-M, 2007 WL 3171213, at *4 (W.D. Okla. Oct. 25, 2007).

Defendant's motion will be granted to the extent it seeks a determination that punitive damages are not available as to the claims against the District.

For the reasons stated, the District's motion to dismiss [Doc. #9] is **GRANTED**. Plaintiff's negligence and Due Process claims against the District are **DISMISSED**. Her claim under Title IX remains for resolution. Defendant Feroli's motion to dismiss [Doc. #14] is **STRICKEN** as **MOOT**. The § 1983 and assault and battery claims against him remain for resolution.

Plaintiff has requested leave to further amend in the event some of her claims are dismissed. As some of the deficiencies noted above potentially could, if the circumstances

warrant, be cured by amendment, plaintiff is granted leave to file a Second Amended Complaint within **fourteen (14) days** if she elects to do so.

   **IT IS SO ORDERED**.

Dated this 10th day of March, 2015.

JOE HEATON
UNITED STATES DISTRICT JUDGE