# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

BRANDI ROOF, individually and as next )
friend and parent of A.S., a minor, )
                                    Plaintiff, )
vs. ) NO. CIV-14-1123-HE
NEWCASTLE PUBLIC SCHOOL DIST., )
NO. 1-1 OF McCLAIN COUNTY , et al., )
                                    Defendants. )

## **ORDER**

Plaintiff Brandi Roof filed this case in Oklahoma state court, asserting claims against Newcastle Public School District No. 1 of McClain County (the "District") and Jared Feroli ("Feroli"), a former high school teacher for the District. The District removed the case to this court. Plaintiff's Second Amended Complaint asserts claims for: (1) violation of Title IX, 20 U.S.C. § 1681, against the District; (2) assault and battery against Feroli; and (3) violation of due process, pursuant to 42 U.S.C. § 1983, against Feroli.[1] The District has moved for summary judgment on the Title IX claim, the only claim asserted against it.

Plaintiff's asserts that, during the time Feroli was employed as a teacher by the District, he engaged in an inappropriate romantic relationship with A.S., plaintiff's minor daughter who was then a high school senior.[2] Plaintiff describes the relationship as

---

[1] Plaintiff asserted other claims which have been dismissed in prior orders.

[2] *The original caption of this case indicates plaintiff Brandi Roof is suing both in her individual capacity and as parent and next friend of A.S. Plaintiff unilaterally changed the caption in the Second Amended Complaint to delete any reference to her individual capacity. In any event, the claims asserted appear to be representative only, on behalf of A.S.*

beginning with "snap chatting" and Facetime exchanges,[3] including ones where Feroli would allegedly forward pictures to A.S. of himself disrobed and exposing his genitals. Plaintiff's evidence is that the relationship progressed to instances of kissing and petting in Feroli's classroom when the two were alone.

Summary judgment should be granted where—in light of the pleadings, discovery materials, and any affidavits—there is no "genuine issue" as to any "material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material "if it might affect the outcome of the suit." Bennett v. Windstream Commc'ns, 792 F.3d 1261, 1265 (10th Cir. 2015). The court must draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005). The court does not determine credibility or weigh the evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. Gossett v. Oklahoma, 245 F.3d 1172, 1175 (10th Cir. 2001).

Applying these standards, the court concludes the District's motion should be granted.

*Factual Background*

The background circumstances are undisputed and plaintiff has explicitly admitted the bulk of the specific facts asserted by the District. Feroli taught a history class in which A.S. was a student. During the fall of 2013, A.S. and a friend, M.W., sometimes stayed after class and talked to Feroli. M.W. began snap chatting with Feroli during this period. Some weeks

---

[3]*Snapchat is a photo messaging application for cell phones, on which users can take photos or record video and send them, with appended text, to specific users.*

2

later, while A.S. was spending the night at M.W.'s house, both of them snap chatted with Feroli, including the exchange of pictures of the girls partially disrobed and of Feroli with his pants off exposing himself. A.S. gave Feroli her Snapchat user name and thereafter the two had snapchat exchanges that were sexual in nature, including discussions of how they could kiss in Feroli's classroom, in front of the closet, without being seen. No one other than M.W. knew that A.S. and Feroli were snap chatting at that point.

At some point in December, A.S. and Feroli were in his classroom and kissed in front of the classroom closet. Later, on December 13, 2013, there was a second incident where A.S. and Feroli kissed again and engaged in heavy petting, in the same area of the classroom. A custodian who noticed A.S. and Feroli in the classroom called a colleague to accompany her, and they returned to the classroom. When they arrived, the lights in the classroom were off and the door was locked. As the custodians tried to enter, Feroli went over and opened the door. A.S. grabbed a book and asked Feroli about a homework assignment. The custodians indicated Feroli approached the door, appeared nervous, and attempted to block the door. The custodians saw A.S. in the back of the room, but did not see A.S. and Feroli kissing or engaged in physical contact.[4]

The custodians reported this incident, which occurred late on a Friday, to the

---

[4]*Plaintiff purports to dispute what the custodians did or didn't see, arguing that A.S., whose deposition testimony defendant relies on, wouldn't necessarily have known what the custodians could see and that her testimony was speculative. A.S.'s testimony is some evidence of the fact asserted and plaintiff points to no evidence to the contrary. Further, plaintiff explicitly agreed with defendant's Fact #15, which states the closet in front of which they kissed was on the same wall as the door "and you cannot see the back of the room by the closet."*

principal, Robert Gilstrap. Gilstrap met with Feroli the following Monday to discuss the incident. Feroli denied any impropriety between him and A.S. and stated that the classroom lights were off because he had just finished teaching using a SMART board (technology which, similar to a projector, is more visible when the room lights are off). There is also a school policy which requires that classroom doors be locked to make them more secure in the event of an active shooter situation. As to the report of him being nervous and blocking the door, Feroli stated he had tripped on his way to open the door for the janitors. Gilstrap warned Feroli against being in his classroom alone with a student, as it could lead to rumors, and instructed Feroli to stay away from A.S. Feroli indicated that he understood. A.S. does not recall any instance of the two of them being alone after that.[5] During Christmas break, A.S. indicates she learned that Feroli had been sleeping with another teacher, an adult married woman, and that, after New Years, she quit staying after class.

On the evening of January 23, 2014, a Thursday, a message was posted via Twitter stating "[a] girl was late to 6th hour [because] she was busy making out [with] the history teacher." The cheerleading coach received the message and forwarded it to Gilstrap, who was then traveling with the wrestling team and forwarded it to the superintendent of schools. The next day, the superintendent directed the an assistant principal of the high school to investigate who the student referenced in the message was, and she determined the message

---

[5]*Plaintiff's brief refers to an alleged incident a week later where one of the custodians saw A.S. in Feroli's classroom sitting behind his desk, when she was supposed to be in the gym, and the assistant principal then removed her from the classroom. The brief cites no evidence in support of the assertion and, in any event, there is no suggestion she was alone with Feroli.*

4

was about A.S. and Feroli. The superintendent then called the Newcastle police and spoke with a detective who came to the school. At approximately 1:15 that day, the superintendent summoned Feroli to his office and told him he was suspended with pay, effective immediately, pending an investigation into his relationship with A.S. Feroli denied any relationship with A.S. A.S. was in Texas with her parents for a cheerleading competition. The superintendent had also directed the cheerleading coach to question A.S. about the circumstances and determined to contact A.S.'s parents on Monday. A.S., when questioned by the coach, denied any relationship with Feroli.

The following Monday the principal attempted to call A.S.'s home. A.S. did not go to school that day and plaintiff, assuming the school was calling about her daughter's absence, called a school secretary to say A.S. would not be at school that day. The next day A.S. returned and Gilstrap met with A.S., plaintiff, and plaintiff's husband. Gilstrap also had the cheerleading coach speak further with A.S., who initially continued to deny any relationship. Later that day, however, A.S. returned to the office and told Gilstrap and the coach she had been involved in a relationship with Feroli. A.S.'s parents were called and came back to the school. That day, A.S. gave a statement indicating she and Feroli had flirted with each other, made sexual comments including discussion of a kiss, and eventually kissed while they were alone after class.

Feroli did not return to work after his suspension on January 24, 2014, and A.S. had no contact or communication with him after that date. Feroli resigned on February 10, 2014.

*Discussion*

5

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88, prohibits a recipient of federal funding from discriminating on the basis of sex such that the target of the discrimination is "excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program." § 1681(a). The prohibition may be enforced by a private right of action for monetary damages. Morris v. Hilldale Indep. Sch. Dist. No. 1-29, 397 Fed. Appx. 445, 450 (10th Cir. 2010).

Sexual harassment is a form of discrimination on the basis of sex under Title IX. Escue v. N. Okla. Coll., 450 F.3d 1146, 1152 (10th Cir. 2006). However, a school district is not vicariously liable for the acts of its teachers which may constitute sexual harassment, but is liable only for its own misconduct. *Id.* Thus, a plaintiff must show that the school remained "deliberately indifferent to acts of harassment of which it ha[d] actual knowledge," that the harassment was reported to someone who had the authority to take corrective action to end the discrimination, and that the harassment was "so severe, pervasive, and objectively offensive that it deprived the victim of access to the educational benefits or opportunities provided by the school." *Id.* (internal citations, quotation marks, and alterations omitted).

Here, the District seeks summary judgment on the basis that the undisputed facts show it was not deliberately indifferent once it had actual knowledge of Feroli's conduct.

Actual knowledge need not rise to the level of a "clearly credible report of sexual abuse from the plaintiff-student." *Id.* at 1153. A school may receive actual knowledge, for example, through reports of sexually suggestive communications between a teacher and other students, uncorroborated complaints of inappropriate physical conduct with a student, or

rumors of an employee's sexual conduct with students. *See* Doe v. Defendant A, No. 12-CV-392-JHP-TLW, 2012 WL 6694070 at *6 (N.D. Okla. Dec. 21, 2012). There must, however, be circumstances sufficient to show a substantial risk of harassment or abuse to a student. A complaint that a teacher made inappropriate comments in class would ordinarily not be enough to put a school on notice that the teacher is likely to abuse a student. *See* Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998). More than a "simple report of inappropriate conduct by a teacher" is required. *Id*. Information that a teacher may be having a consensual relationship with another adult is not sufficient to put the school on notice of a substantial risk of abuse to a student. Escue, 450 F.3d at 1154 (noting that knowledge of a teacher dating other adults his own age does not give knowledge of risk to a student.)

Plaintiff argues the District acquired actual knowledge that Feroli posed a substantial risk of sexual abuse to A.S. as early as December 13, 2013, when the District received the report of Feroli being observed alone with her in a locked classroom with the lights off. By that time, plaintiff argues, the school board had already received a complaint about Feroli having an affair with a married teacher. However, as noted above, a consensual relationship with another adult is not enough to put school authorities on notice of a substantial threat to students. *See* Escue, 450 F.3d at 1154.

The December 13, 2013, incident as reported by the custodians was no doubt unusual enough that investigation was warranted. The darkened, locked room and Feroli's behavior after opening the door were enough out of the ordinary that some followup was undoubtedly

7

appropriate. But the undisputed facts show the district did immediately investigate the circumstances. The principal promptly questioned Feroli, received a plausible explanation for his conduct, and cautioned against him being alone with a student. Further, even drawing all inferences from the circumstances in favor of plaintiffs, they were not sufficient to put the principal/school on notice of a substantial risk of harm to a student. The custodians had not observed any physical contact between the two. The door being locked was apparently consistent with school policy. Feroli's explanations of tripping, or of the room being darkened due to use of the SMART board, were not obviously unreasonable. The evidence as to the December 13 incident does not show the necessary knowledge on the part of the district.

The next month, on January 23, 2014, the school received notice (via a Twitter message) of a direct allegation of inappropriate sexual conduct between an unnamed student and a history teacher. At this point, the District at least knew of a specific allegation of improper contact between a teacher and a student, arguably giving it actual knowledge of substantial risk of sexual harassment to a student.

But actual knowledge of a substantial risk, by itself, is insufficient to establish liability under Title IX. Liability attaches only if, after acquiring the necessary knowledge, the school reacts with deliberate indifference to the risk. Murell v. Sch. Dist. No. 1, 186 F.3d 1238, 1246 (10th Cir. 1999) ("Davis imposes liability only if the district *remains deliberately indifferent* to acts of harassment of which it has actual knowledge.") (discussing Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629 (1999)) (emphasis added). Deliberate indifference

8

is conduct that is "clearly unreasonable in light of the known circumstances" and which causes the victim of harassment to remain subject to that harassment or at least vulnerable to it. Escue, 450 F.3d at 1154–55.

Here, the undisputed facts establish that, immediately after the District learned of allegations of the inappropriate relationship, it investigated and determined the identities of the involved student and teacher, interviewed the alleged participants, and suspended the teacher whose conduct was questioned. It promptly notified the parents and continued its investigation, including alerting the police. Its actions were sufficient to prevent any further contact between A.S. and Feroli after Feroli's suspension. It is undisputed that Feroli was in the school only once after his suspension, that he was escorted by the principal, and had no contact with students. There is nothing in these facts which would support an inference of deliberate indifference by the District or its supervisory personnel after it or they had actual knowledge of a substantial risk to a student.

As plaintiff's submissions are insufficient to create a justiciable question as to whether the District was deliberately indifferent, the District is entitled to summary judgment on the Title IX claim. The District's motion for summary judgment [Doc. #31] is **GRANTED**.

The claims against Mr. Feroli remain for resolution.

**IT IS SO ORDERED**.

Dated this 8th day of February, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE